UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BYRON CRAIG HENDERSON,

                    Plaintiff,

      v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

NO.  C13-2135-MJP-JPD

REPORT AND
RECOMMENDATION

Plaintiff Byron Craig Henderson appeals the final decision of the Commissioner of the

Social Security Administration ("Commissioner") which denied his applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

the Commissioner's decision be reversed and remanded for further administrative proceedings.

## I.  FACTS AND PROCEDURAL HISTORY

At the time of the first administrative hearing, plaintiff was a 44 year old man with a

high school education.  Administrative Record ("AR") at 46.  His past work experience

includes employment as a garbage collector and ice cream maker.  AR at 47; *see also* AR 221-

32 (identifying past work as a warehouse worker, quality assurance worker, ice cream maker, and laborer).   Plaintiff was last employed in 2009.  AR at 46-47.

On June 14, 2010, plaintiff protectively filed concurrent claims for SSI payments and DIB, alleging an onset date of September 30, 2007.  AR at 175-78.  Plaintiff asserts that he is disabled due to attention deficit disorder, depression, bipolar affective disorder, anxiety, and psychosis.  AR at 198.

The Commissioner denied plaintiff's claims initially and on reconsideration.  AR at 97-100, 104-15.  Plaintiff's requested hearings took place on August 19, 2011, and March 26, 2012.  AR at 43-92.  On April 6, 2012, the ALJ issued a decision finding plaintiff not disabled, and denied benefits based on a finding that plaintiff could return to his past relevant work as a warehouse worker and quality assurance worker, and, in the alternate perform other work that exists in significant numbers in the national economy.  AR at 16-42.   Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On November 24, 2013, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. No. 1.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Mr. Henderson bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. §§  404.1572, 416.972.

REPORT AND RECOMMENDATION - 4

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.     DECISION BELOW

On April 6, 2012, the ALJ issued a decision finding the following:

1.     The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

2.     The claimant has not engaged in substantial gainful activity since September 30, 2007, the alleged onset date.

3.     The claimant has the following severe impairments: a bipolar disorder, a personality disorder, and a history of drug and alcohol dependence, in remission.

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels.  In terms of nonexertional limitations, he can understand, remember, and carry out both simple and complex instructions.  He can maintain an ordinary routine without special supervision.  He can have occasional interaction with supervisors and coworkers, but he is limited to superficial contact with the general public.  He can deal with normal work-related hazards.  He would

have some difficulty working in an unpredictable work setting, but he can deal with changes in a routine work setting on a sustained basis.

6.    The claimant is capable of performing past relevant work as a quality assurance worker.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.    The claimant was born on XXXXX, 1967 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[2]

8.    The claimant has at least a high school education and is able to communicate in English.

9.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10.   In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.   The claimant has not been under a disability, as defined in the Social Security Act, from September 30, 2007, through the date of this decision.

AR at 22-35.

## VI.    ISSUES ON APPEAL

As identified in plaintiff's Opening Brief, the principal issues on appeal are:

1.    Whether the ALJ erred in failing to call a Vocational Expert and in reaching findings without the testimony of such expert.

2.    Whether the ALJ erred in failing to properly consider the opinions of the examining providers in the record and in failing to provide adequate explanation for not according those opinions more weight.

Dkt. No. 16 at 1-2.

## VII.    DISCUSSION

A.    The ALJ's Findings at Step Four

---

[2]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

Plaintiff argues the ALJ erred at step four of the sequential evaluation process by finding plaintiff could return to his past relevant work as a quality assurance worker and warehouse parts worker (AR at 32). Dkt. 16 at 3-6. Specifically, plaintiff argues there is insufficient evidence in the record to determine whether an individual with plaintiff's RFC could perform plaintiff's past work. This Court agrees.

At step four, the claimant bears the burden of proving he can no longer perform his past relevant work. 20 C.F.R. §§ 404.1512(a), 404.1520(f), 416.912(a), 416.920(f); *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003). Although the burden of proof lies with the claimant at step four, the ALJ retains a duty to make factual findings to support his conclusion. *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001) (citing Social Security Ruling ("SSR") 82-61). The claimant must be able to perform:

1.   The actual functional demands and job duties of a particular past relevant job; or

2.   The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

SSR 82-61, 1982 WL 31387*2. "This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." *Pinto,* 249 F.3d. at 845 (citing SSR 82-62). A claimant may be found not disabled at step four based on a determination that he can perform past relevant work as it was actually performed *or* as it is generally performed in the national economy. SSR 82-61, 1982 WL 31387; SSR 96-8p, 1996 WL 374184. "[T]he best source for how a job is generally performed is usually the Dictionary of Occupational Titles [DOT]." *Pinto,* 249 F.3d at 845-46 (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)).

Here, the ALJ determined plaintiff has the RFC "to perform a full range of work at all exertional levels."[3]  AR at 25.  With regard to non-exertional limitations, the ALJ limited plaintiff to "occasional interaction with supervisors and coworkers" and "superficial contact with the general public."  AR at 25.  The ALJ further noted plaintiff "would have some difficulty working in an unpredictable work setting."  AR at 25.  The ALJ failed, however, to make specific findings regarding the physical and mental demands of plaintiff's past work.  *See Pinto*, 249 F.3d. at 845 (citing SSR 82-62).

In reaching a determination at step four, the ALJ adopted the state agency finding that plaintiff is capable of performing his past relevant work as a quality assurance worker and a warehouse parts worker.  AR at 32 (citing 97, 104, 457).  The ALJ based this finding on the evidence in plaintiff's Work History Report (AR at 218-232), and the information contained in the DOT.  AR at 32.  It is notable, however, that neither the ALJ, nor the state agency determination relied on by the ALJ, identifies the DOT titles corresponding to plaintiff's past work.  *See* AR at 32, 457.

In his Work History Report, plaintiff describes the duties of his job as a warehouse parts worker as: "Give parts to workers in the warehouse [i]f they asked from them."  AR at 222.  Aside from the admission that plaintiff did not supervise anyone in this position, plaintiff's Work

---

[3] Plaintiff also argues it is not clear whether the ALJ found plaintiff had no exertional limitations or whether the ALJ limited plaintiff to light work activities.  Dkt. 16 at 3 (*comparing* AR at 25 ("I find the claimant has the residual functional capacity to perform work at all exertional levels.") *with* AR at 35 ("I have also found the claimant to retain the residual functional capacity to perform work at the light level of demand, which would include sedentary work as well.")).

The Court acknowledges that the ALJ's step five analysis could be read to suggest an RFC finding that encompasses both exertional and non-exertional limitations.  However, in light of the Court's findings regarding the ALJ's step four determination, *see infra* section A, and the Commission's failure to defend the ALJ's alternate step five determination, *see infra*, section B, it is not necessary for the court to reach a determination on this issue.

History Report provides no information regarding the level of interaction plaintiff had with supervisors and coworkers in this position.  Moreover, plaintiff's description of this work—giving parts when asked—indicates a level of interaction with coworkers that exceeds the occasional level.  *See* SSR 83-10, WL 1983 31251*5 (defining occasionally as "occurring from very little up to one-third of the time.").  Additionally, because the record does not identify the appropriate DOT title for this job, it is not possible to determine the level of supervisor and coworker interaction required by this job as it is generally performed in the national economy.

A review of the information contained in Plaintiff's Work History Report regarding plaintiff's past work as a quality assurance worker reveals similar evidentiary deficits.  AR at 221.  Plaintiff described the duties of this job as: "Inspect movie films for tears and dirt."  AR at 223.  As with plaintiff's work as a warehouse parts worker, there is no information in the record, aside from the recognition that plaintiff did not supervise others in this position, regarding the level of interaction plaintiff had with supervisors and coworkers while performing this job.  AR at 223.  Similarly, because the record also does not identify the corresponding DOT title, it is not possible to determine the level of supervisor and coworker interaction required by the quality assurance worker job as it is generally performed in the national economy.

For these reasons, there is insufficient evidence in the record regarding the mental demands of plaintiff's past relevant work, both as actually performed and as generally performed, to reasonably conclude that an individual with plaintiff's RFC could perform this work.  *See Pinto*, 249 F.3d at 844-45 (citing SSR 82-62).  As such, the ALJ's step four determination is not supported by substantial evidence.  *See Bayliss*, 427 F.3d at 1214; *Magallanes*, 881 F.2d at 750.

B.    The ALJ's Findings at Step Five

Plaintiff also raises issue with the ALJ's alternate finding at step five that plaintiff could perform other work that exists in substantial numbers in the national economy.  Dkt. 16 at 5-6. Specifically, plaintiff argues the Commissioner did not meet her burden at step five to prove plaintiff could perform other work due to language in the ALJ's step five analysis that suggests plaintiff may have exertional as well as non-exertional limitations, *see infra*, foot note 3, and due to the non-exertional limitations contained in the RFC, which would reduce the numbers of existing jobs plaintiff could perform.  The Court notes that the Commissioner fails to address these arguments in her brief.

As mentioned above, at step five of the administrative process the burden of proof shifts to the Commissioner to produce evidence of other jobs existing in significant numbers in the national economy that plaintiff could perform in light of his age, education, work experience, and RFC.  *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098–1099, 1101 (9th Cir. 1999); *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988)).  In *Tackett*, the court noted "there are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical–Vocational Guidelines at 20 C.F.R. Pt. 404, subpt. P, app. 2 ."  *Id*.  The ALJ in this case did not use a vocational expert and, instead, relied solely on the Medical–Vocational Guidelines ("the grids" or "the guidelines") to perform his step-five evaluation.

The grids present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant.  The grids categorize jobs by their physical-exertional requirements and consist of three separate tables (one for each category): "[m]aximum sustained work capacity limited to sedentary work," "[m]aximum sustained work capacity limited to light

work," and "[m]aximum sustained work capacity limited to medium work."  20 C.F.R. pt. 404, subpt. P, app. 2, rule 200.00.  Each grid presents various combinations of factors relevant to a claimant's ability to find work.  The factors in the grids are the claimant's age, education, and work experience.  For each combination of these factors, the grids direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements.  *Tackett*, 180 F.3d at 1101 (emphasis in original).

The ALJ's reliance on the grids at step five is justified if they "completely and accurately represent a claimant's limitations . . . . In other words, a claimant must be able to perform the full range of jobs in a given category, i.e., sedentary work, light work, or medium work."  *Tackett*, 180 F.3d at 1101 (emphasis in original) (internal citations and footnote omitted).  If the grids do not match all of the claimant's qualifications, the Commissioner may not use them as a framework to make a determination of what work exists.  *See Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007).  Importantly, the grids can still be used if there are both exertional and non-exertional limitations present, as "a vocational expert is required only when there are significant and 'sufficiently severe' non-exertional limitations not accounted for in the grid."  *Id.* at 1076 (finding that mild or moderate depression does not establish a "sufficiently severe non-exertional limitation" to preclude reliance on the grids at step five).

In other words, the question of whether the ALJ may rely on the grids in a case where a claimant suffers from both exertional and non-exertional impairments depends upon whether the claimant's non-exertional impairments are "significant and sufficiently severe" such that they affect a claimant's ability to perform the full range of jobs at the appropriate strength level.  If the occupational base is significantly limited by a non-exertional impairment, the ALJ may not rely on the grids to carry the burden of proving that there are other jobs a claimant can do.  Instead, the testimony of a vocational expert is required.

REPORT AND RECOMMENDATION - 11

1    Although the Ninth Circuit has recognized that harmless error principles apply in the

2    Social Security context, defendant offers no argument as to why the ALJ's errors at step four

3    may be considered harmless, and no explanation as to why plaintiff's non-exertional limitations

4    do not preclude reliance on the grids at step five.  *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th

5    Cir. 2012) (citing *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)

6    (collecting cases)).  For these reasons, the ALJ's decision should be reversed and remanded for

7    further administrative proceedings.  On remand, the Commissioner should further develop the

8    vocational record regarding the demands of plaintiff's past relevant work, reassess plaintiff's

9    RFC to clarify any ambiguity regarding plaintiff's exertional limitations, and, if warranted,

10   further develop the vocational record regarding plaintiff's ability to perform other work.

11         Plaintiff also raises issue with the ALJ's assessment of the medical evidence.  Dkt. 16 at

12   6-11.  Although the Court's remand of the ALJ decision is limited to the previously addressed

13   bases, it is notable that the record indicates plaintiff received weekly individual counseling at

14   Sound Mental Health from 2009 through at least 2012.  *See* AR at 468 (indicating plaintiff

15   receives "[f]ull-range case management services including: regular appointments with the

16   ARNP, [medication] monitoring, and at least two 1 on 1 appointments per week."), 500

17   (reporting weekly visits with a mental health provider and a trauma specialist at Sound Mental

18   Health, and monthly medication visits with an nurse practitioner), 535 (case manager at Sound

19   Mental Health working with plaintiff from 2009 to 2012), 539 (reporting attending weekly

20   mental health counseling at Sound Mental Health for the past two and a half years).  Plaintiff's

21   case manager Zachary Hamren, B.A., and trauma specialist, Jennifer Alderman, M.S.W.,

22   M.H.P., even submitted statements describing plaintiff's functional limitations.  AR at 463-69,

23   535.  However, no treatment notes from these providers are included in the administrative

24   record.  Only the treatment notes of Kelly Bliss, A.R.N.P., plaintiff's mediation provider at

Sound Mental Health, are contained in the record.  AR at 470-99, 515-34.  Accordingly, on remand the Commissioner should to further develop the medical record regarding plaintiff's mental health treatment.  The Court notes that this development of the medical record may require reevaluation of the medical opinion evidence.

VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g), and not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **November 28, 2014**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 5, 2014**.

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 14th day of November, 2014.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13